Good morning, Your Honors. Robert Boyce on behalf of Appellant Nunzio Guadagni. I'd like to reserve three minutes for rebuttal. The totality of the circumstances established by the affidavit in this case for probable cause was that someone used Mr. Guadagni's unsecured IP address within a thousand feet of his residence, and it could have been anyone, inside or outside the home, on a smart phone, on a laptop, on a computer, on a tablet, sitting in his car, a visitor to the house, or a neighbor, within a 20-minute period of time on March 19, 2010, and viewing three images of child pornography, 15 months before the affidavit for the warrant was submitted. This is not a fair probability that you're going to find child pornography inside the house at the time that the search was conducted. It's inconsistent with Fourth Amendment guarantees, and I think that no one would want to – would want the Fourth Amendment to say that simply because there was – you have an unsecured – you have an unsecured IP address. Why should having an unsecured IP address be a get-out-of-jail-free card? I mean, what's the basis for an inference that there's less than a fair possibility or probability that the user is not the owner of the house who has proper access to the router and to the wireless network? I mean, yes, it's possible. You can drive along and catch somebody else's signal. But I suspect that most usage of wireless networks is by the people that are expected to use the wireless networks. So what's the basis for deciding in this case it's not even a fair possibility that it was the homeowner that was using his own router? Because when it's an unsecured network, it's not at all unusual for somebody else to have been using it. In fact, there are cases. But the standard isn't, is it unusual? You have to tell us it would be unusual for the homeowner to be using it, because the standard isn't a probable cause standard. It's much less than that. It's hard for me to understand how there isn't at least a fair possibility that the homeowner is the person that's using his wireless network. Well, it's – if that establishes probable cause for the – But the – If that establishes – okay, if that establishes a fair probability, then if you have an unsecured network and then someone driving by, a visitor to the house, a neighbor, anybody else that logs on to that using that unsecured network. That's right. And 15 months later, the – Well, now you're introducing a second factor. And maybe the two combine. But I'm starting here with the geography point. That is, what's the likelihood that somebody who uses an unsecured wireless network is not the person who's supposed to be using it? I think there's a strong probability. Well, what's the support for that? It could be somebody else. It could be. But I need to know why it is it should not be inferred there's at least a reasonable possibility that it's the homeowner using his own network. Because that's – Isn't that what you have to prove here? Well, I think when you have it equally possible that anybody in that area could have accessed that – Equally possible? Isn't that enough? No, I don't think – not under these circumstances. And you have to look at the totality of the circumstances. That makes it different. It's 15 months later. It's a 20-minute period of time with somebody looking at three images, which is consistent with somebody that was an accidental – or not an accidental, but a casual browser passing by, rather than somebody – there's no evidence that this was a collector of child pornography that was viewing this. Can I ask sort of a more basic question? Because I'm trying to – so with the search warrant asked to search an IP address, do we know if that IP address is like a computer, a personal computer that's sort of installed in a house, or if it's an iPad that itself moves locations? How – what does that IP address tell us? It doesn't tell you anything about what it's connected to. It could be connected to a PC, which obviously has a lot more – and a lot of cases recognize this one. It's a computer. It has a lot more – If it's a computer, a home computer, say, like the one – I'm sorry? If it's a home computer, say, like the one plugged at my office, and that's what they want to search. You don't know – It's more likely, right, that it's still there? Well, if you can connect it to the computer inside the home, that's a lot different. But you can't – it wasn't connected to the computer inside the home. It could have been anything. It could have been a laptop. It could have been a smartphone. Well, when the agents made their ruse visit five days before, did they see a computer? They looked inside the home. And I recall something, and I don't want to misrepresent the record, that it was in the discovery or if it was a testimony, that they were inside the home. And I'm not sure if we got to that point yet as to what they saw when they were inside the home. I know they talked to Mr. Guidani. But I think the government can also, when they're faced with this situation, they can, they have the technology to be able to tell by going on that IP address, they can determine if the access is being conducted by coming from within the house or if it's occurring by a neighbor or somebody, a passerby or somebody else. And there are cases that we've cited in the reply brief where that has occurred. As a factual proposition, I don't deny that the CIA certainly has capability, but the information ordinarily is obtained, like, from whoever the service provider is. It's a cable company, phone company, whoever's providing the Internet service to that location. And I don't think the cable company keeps track of what kind of device is attached. I mean, you've got a router in the house. That's what creates the wireless network. The IP address will get you to the router. It will not necessarily get you to which device is being used to the router. Now, the CIA can do it, but does the phone company or the cable company have records that would permit the law enforcement agents to find out what the specific device was? Well, we're talking about a couple different things. One is we don't know what type of device it is. It could be any. I think that's right. I think we don't know. But the agents do have the capability to narrow this down to whether or not it's coming from within the house or if it's coming from outside the house. Do they have that ability reaching back to the past? I mean, if they're doing contemporaneous surveillance, I think the answer is yes. But here they're based on records of something that's already taken place. They can't go to the site to figure out what's being done right now. And do the phone company records give that information? I don't believe they do. So if they don't, to tell me that the agents have the capability is not telling me something that's actually true, is it? No. They do have the capability. If they're there on the scene at the time. Not necessarily at the time. But within a short period of time, they can conduct surveillance and determine much better than they did in this case whether or not the user is the person in the house or the person viewing child pornography is a neighbor. How do they do that? Well, they've done it. How do they do that in retrospect? You can conduct surveillance and see if it can happen in the future contemporaneously. But is there any way to do that retrospectively? Can you go to my house and tell me when my son was using the computer last week, which computer, which device he was on? I don't. Without the computer, no, I don't believe you can do that. Well, isn't that what we have here? Law enforcement has information about usage through this IP address in the past. I don't know of anything they could do to capture what device is being used. I think you're suggesting they could go to the location and try to surveil to see if something is being done in the future contemporaneously, but that's something a little different. Well, there's at least two cases that we cited. There are unpublished cases that talk about this situation where they did.  retrospectively. I know they can do it if they're on the scene surveilling. But what I don't think they can do, and so far I haven't heard anything from you that suggests that they can, is to go back in the past and say, okay, we know something happened at this IP address. We'll go to that location and determine what device was used or whether it was inside the house or outside the house. I don't think that's physically possible. I have to admit I'm not sophisticated enough to answer that question, but I don't know if we want a law that says that the Fourth Amendment permits this type of search where we have an unsecured network. Well, then you just ask every child pornographer in the world to make sure the network's unsecured because there's a possibility that somebody can use the network. Well, that's a risky proposition for a child pornographer because, like I said, there are many cases that law enforcement does have the capability to do this. It takes more time, and it's certainly more difficult than saying, go in and get a warrant like they did in this case and waiting 15 months. But certainly if they had done it closer in time and had used a little more energy, they could have certainly determined whether or not the person at the house was actually the person that was obtaining or was seeking child pornography. I'm trying to figure out which part of your argument deals with sufficiency, i.e., that it was this person that was viewing and downloading this child pornography, and which part of your arguments and your answers have to do with the probable cause of the good faith argument. And I'm kind of getting lost. Is this all argument still based on your Fourth Amendment argument, not your sufficiency argument as to whether it can show that this was the person that was using it? We are not making a sufficiency argument. It's all on the probable cause. And we don't even know if it was downloaded. All we know, in the sense that it was affirmatively moved to the computer, all we know that it was. Why isn't this at least a colorable claim covered by the search warrant so that the good faith rule applies? Because you have an expert in computer forensics that is writing the affidavit and is aware of the fact that this could have been anywhere within a thousand feet of the residence. It could have been a neighbor. It could have been a visitor. We don't know whether it's an actual PC computer or whether it's a laptop or whether it's a smartphone or whether it's a tablet. And it's three images in a very short period of time,  or that is in a car parked outside or driving by, rather than the person in the car inside the house that would be using it in a much more Let's say somebody goes into your neighbor's have free use of your kitchen and they go into your refrigerator five times a day. And there's evidence to show that there's a refrigerator at this residence. You own the residence. And there's contraband in that refrigerator. Why would the fact that other people use your refrigerator have any bearing or not as to whether or not that you could get a search warrant to look inside that refrigerator? Because we don't know if it's in the refrigerator or not. It could be outside. It could be a neighbor. It could have been not a refrigerator, but it could have been a handbag that you had in the house. And it left. Fifteen months later, it's not going to be there. That's why the totality of this Not in a smartphone, not in a tablet. And it depends on how big the hard drive is and whether it was saved. If it's deleted, then you don't know when it's going to be overwritten. And that's only when you have a PC computer, too. So 15 months later, this could have been anywhere. I'm running out of time. I just wanted to say that I also feel that the as the district court said was an extremely close issue as to whether or not Mr. Widani was in custody or not. And I've outlined the reasons why I believe he was in custody in the brief. Thank you. Thank you, counsel. Good morning, and may it please the court. Helen Hong on behalf of the United States. The magistrate judge here did not clearly err when it found that there was a fair probability that evidence of child pornography possession would be found at Mr. Widani's residence. And that's because the affidavit contained investigative facts about three things. First, that an electronic device was used to commit the offense of downloading images. Second, that someone at an IP address associated with Mr. Widani's residence downloaded files from a website that contained child pornography. And third, that Mr. Widani is a collector based on the expert opinion of Agent Aida Vasquez, who had five years' experience investigating child exploitation offenses. None of those factors is unique or on an island. The Ninth Circuit and Sister Circuits have all found each of those three factors relevant in determining whether a fair probability exists to support a search warrant. And they do here as well. The first, that it was an electronic crime. Computers have long memories. It's been established by this circuit for quite some time and was reiterated in United States v. Self just last year. The fact that electronic evidence tends to persist for long periods of time is not unusual. Did the affidavit state that the images were downloaded? The affidavit did not state that the images were downloaded. The affidavit stated that the individual had obtained and received the images. Imagine, for example, that you're on Westlaw and you are looking at links of cases. When you press the print button, a Word document or a PDF document arises with the same text that's contained in the webpage itself. At that point, an individual has obtained and received the document. In the same way that an individual at Mr. Guadagni's residence had obtained or received three images of child pornography. What the affiant did not state was that Mr. Guadagni had saved those documents onto his hard drive. And there's a distinction there because the magistrate judge could certainly make the reasonable inference that a person who downloaded, in effect pressed print on the Westlaw case, had saved that document onto the computer. But that downloaded was when you clicked on the image on your computer and the image then comes to your computer. But if not, you save it. That's correct. And that is what you have to print it. That's, well, and I'm saying this by analogy to the Westlaw, something that, you know, as lawyers we review. When you press print on the case itself, which appears on the Web interface, that brings the document to you. You obtain and receive that document. That is what Mr. Guadagni did here. Or that is what someone at Mr. Guadagni's residence did. And from that, it was reasonable for the magistrate judge to infer that Mr. Guadagni or someone at his residence had downloaded and collected three, at least three images of child pornography. When you looked at them, that he, that someone there had looked at it indicated that he was collecting it? And that was the expert opinion. That's the third factor that I discussed. That was the expert opinion of Agent Vasquez, who had five years of child pornography investigation experience. What she reviewed and set forth in her affidavit were a number of things. One, she described the Web site, liberalmorality.com. This Web site, as she described and as set forth in the excerpts of record, page 27 and 28, is that the Web site had three active links. One was to hot girls, and that link brought up ten images, all of which depicted minors either nude or engaged in sexually explicit conduct. Nine of them depicted minor females with their genitals exposed. The tenth image depicted a prepubescent male as he was anally penetrated by another male. That page had links to 34 other pages, many of them, many of which contained images of child pornography. This was a child pornography Web site. Agent Vasquez also described the link to the porn stars page. There were 12 images there. And he looked at it three times. We don't know what he looked at, but he went to this Web site three times? We know that the individual went to the Web site and obtained and received three images over the course of a 12-minute period. Okay. So what we know is that Mr. Guadagni or someone else. I'm collecting an important aspect of this case. In this case. In other words, I don't know how you could state that, you know. I look every day and see how the Dodgers did, given that I live in Texas and I'm a Dodger fan. And it's every day I look, and I see, you know, whether Grampy won or whatever. But I don't know how that, if I look at it every day, that means I'm collecting. Right. And I think there, as this circuit has recognized, child pornography crimes or the nature of the offense is relevant to the expert opinion that's been provided. As courts, as the panels in this circuit and as sister circuits have recognized, child pornography offenses are not fleeting crimes. They're not done openly and notoriously. And so in Agent Vasquez's expert opinion, a person who went to a website that contained links with the text like webcams, live shows, little girls, nude, and that end. So collection was important for the purposes, not that the person is not doing something wrong, but it's important from the standpoint of the warrant to show that he's collecting it, and so that if you get the warrant, that you'll be able to discover that it is there. In this case. That's where collection is important. In this case, yes, Your Honor. And the reason that the collection language that Agent Vasquez provided was there was because the affidavit was a marriage of both the persistence of electronic evidence as well as the fact that an individual that accessed this sort of web page downloaded three images over the course of 12 minutes. This is not a fleeting visit. So you have three images in 12 minutes. How does that make somebody a collector? In Agent Vasquez's opinion, and this is what she set forth in her affidavit, an individual at the subject premises exhibited the characteristics of a person who was sexually interested in children. Wouldn't it be just the opposite? Let's say you're sexually interested in children and you know it's illegal and you know under Federal law you download that one time and you're going to jail for a long time. Why wouldn't you just, a person inclined, just look at it and make sure that he doesn't collect it? And we know from experiencing investigations and cases in this circuit that that's not the case. What happens with individuals, and this is the nature of the crime that's described by circuits throughout the country, is that the nature of the crime is one that's done not openly and notoriously. Individuals will hoard these images so that they can look at them at any time. When an individual is not connected to the Internet, they can have access to these images. I'm looking at the front end, though. I mean, I looked at the affidavit and it has a number of expert opinions based upon individuals who collect and distribute child pornography. But I'm not sure I understand how it is it can be properly inferred or opined that somebody who's on a website and downloads three images over 12 minutes, and that's sometime before, is somebody who collects and distributes child pornography. All the opinions appear to relate to individuals who collect and distribute child pornography. What's the evidence that a person who's been to one website for 12 minutes for three images is such a person? And Agent Vasquez provided her expert opinion on that. Well, I don't know. Yeah, wait, wait. She didn't say anything, apparently. Well, and I. I mean, that would make sense. And it's expert opinions that's not unmoored in precedent in this circuit either. If you look at United States versus. Where does she give that opinion? Excerpts of record, page 35, paragraph 20 of her affidavit. I'm on paragraph 20. If you go to at the very beginning, she writes that based upon the above investigation, it is believed that the person residing at the subject premises has a sexual interest in children. Based on my training and experience, she then goes and describes what individuals have an interest in children. No, she describes that individuals who collect and distribute child pornography tend. Correct. There's a gap between those two things. And there's a gap between somebody who's looked for 12 minutes of three images and somebody who has a sexual interest in children. And if the last paragraph of that affidavit, paragraph 20, the last subparagraph, Agent Vasquez opined that the person's residing at the subject premises exhibits the common characteristics described above of someone involved in the possession of child pornography as evidenced by the facts set forth in the affidavit, including the fact that, one, the person accessed images from a website that contains child pornography, and, two, that several of those files contain depictions of minors engaged in sexually explicit activity. But if you look at them three times and that's what they show you collect them, that's her opinion. In her opinion, she has deemed that a person who goes to a website and sees that one page has ten images all entirely consisting of minors that are unclothed and engaged in sexually explicit activity, a second page that advertises webcams, live shows. Not that she looks at them. Not that she's addicted to looking at them. Not that he's got some unusual thing, but that he actually collects them. That was her expert opinion, yes, Your Honor. And that's based on the description of the website and what the website contains. That's based on. It's based on an inference that goes, I think, the wrong direction. She is saying, and I'm reading the second paragraph, 20, the person's residing at the subject premises exhibits the common characteristics described above of someone involved in blah, blah, blah, blah. Well, yes, it is likely true that somebody who is involved in the distribution receipt and possession of child pornography has gone to these websites. That's not the same thing as somebody who's gone to those websites is necessarily somebody who is someone involved in the distribution receipt and possession of child pornography. It's the wrong way. And I think that here the inference is not one simply because an individual went to a website. What we have here. Well, what else is it based on? All you've given us is 12 minutes and three images. What else is there? It's 12 minutes, Your Honor. Not one, not two, not three. 12 minutes. The time that my colleague, Mr. Boyce, spent on his oral argument is the time that it took. And that was incredibly fleeting, wasn't it? It took longer to meet, Your Honor. It took hours for hours and I haven't collected one of them. But, and again here, that's why the nature of the offense matters. Child pornography offenses. What was he charged with? He was charged with five counts of receipt and possession of child pornography, Your Honor. So you actually found downloaded images? Yes, Your Honor. They were there. Okay. Yeah. And this is, this case is not all that different than, for example, Gord, where the en banc panel here in 2006 found that an individual who went to a website that contained child pornography, exhibited an interest in obtaining those images, was likely to have those images at his residence. In that case, I believe it was six months later. The court there called it the triad of solid facts. Well, why is then the expert's opinion that? Why, if that case stands for that proposition, don't we have enough to show that we looked at a website that had these bad images, that had lots of these images, and looked at them three times, and that in and of itself is, and that people do this, I mean, that it would still be on your computer. Why isn't that enough? Why do we have to go to self-serving stuff from some expert? I mean, it reminds me of the child welfare cases where these people that don't know, never brought up a kid just out of school, speculate on how a child is hurt and this and that and whatever, and it's all self-serving. And I don't know where it comes from. It comes from Mars. Well, and I'll say that in this case, Agent Vasquez was right. She came upon an individual who had been collecting child pornography for 15 years. But I hear you. The question is, do you need to have collector language in every single child pornography case involving computers? And the answer there is no. The court, this court found that in United States v. Hay. In Hay, the court said that it misfocused the inquiry in order to determine whether Hay fit the profile of a collector or not. But in Hay, the time period that had elapsed was just six months. Here, because there was a 15-month period, the question is whether there was dissipation of the likelihood. But you had to have a collector element because it was otherwise stale. I don't know that you had to have it, but it was existent here. What Agent Vasquez did was provide that expert opinion. And I'll say it's not one that's unfounded either. In United States v. Lacey, for example, the court accredited the collector language provided by an expert based on two downloads that an individual made from a bulletin board months, 10 months earlier. And in that case, the panel found that those two downloads from the BAMSI, I think that's the bulletin board name, from the BAMSI bulletin board, was sufficient to conclude that the collector language applied. And here we have three images that were downloaded. And three images of definite child pornography involving a 4- to 5-year-old girl, a 9- to 10-year-old girl, and a 10- to 12-year-old girl. Three images that were downloaded over a 12-minute period. The question here is whether there was sufficient evidence for the magistrate judge to conclude that a fair probability existed that child pornography would be found at Mr. Guidani's residence. The fact that there was an IP wireless router does not disturb that conclusion. So where does good faith come in? Or you're saying you don't need good faith. Well, good faith, good faith obviously is another way that the court can affirm in this case. Because there was no Fourth Amendment deficiency in the warrant, you don't even need to get to good faith, but the court could also not even look at the Fourth Amendment issues and find that there was good faith here. Well, it's a colorful claim. You know, the people that are enforcing it have a warrant, and it's a colorful argument. Absolutely, Your Honor. We had a detached magistrate judge, now district court judge, conclude that there was probable cause when she signed off on the warrant. We found a district court judge in this case who found that there was sufficient facts to support probable cause. And under precedent in this circuit, for example, United States v. Needham, where the affidavit contained just the bare conclusion that a person who sexually molested children would possess child pornography, the court in that case found  that there was probable cause. Under analysis, substantively under the Fourth Amendment, the United States admits that there was probable cause to support the warrant. But second, that for those same reasons, that good faith applies as well. I see my time is up. Thank you. Do you want one minute or? I'm sorry? Do you want one minute or? Please. He's got a little more than that. He already has. One minute. First of all, the opinion that this person or whoever accessed this was a collector is inconsistent with Ninth Circuit authority, particularly in Gorg, which talks about what is needed for somebody to be a collector. And that's necessary, too, because in this case you've got a 15-month gap between the warrant and when they went to seize the evidence. The cases talked about by Ms. Hong are distinguishable. Hay was a wired Internet connection. The person was the sole user of the computer, so they could tie it directly to that computer. Lacy was a 97 case in which there were 16 occasions when this person made long-distance calls to an entirely different type. It wasn't a public. It wasn't a public website. It was a bulletin board, which is out of date now, but it was a specialized type of Internet service where they went internationally to download certain child pornography, and in 97 it would have taken hours to do that under the Lacy case. Those cases are distinguishable from the situation that we have here. And just to be clear, all that can be shown in this case is that somebody went to this website, liberal morality.com, and there were two pages that they clicked on. One was the hot girls and one was the hot porn. One was the hot girls and porn stars, I think. When you click on that, it brings up all these thumbnail images, which are now on your computer. They're automatically put there by the web browser, and three of those images were clicked on during this 12-minute period of time. All right. Thank you, counsel. U.S. v. Guantanamo is submitted, and this session of the court is adjourned for today. Thank you.
judges: Benavides, WARDLAW, CLIFTON